IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER

Civil Action No. 19-cv-00104-MSK-SKC

CHASE DECKER,
JEREMIAH ALDRICH,
OLUFEMI AKADIRI,
TIFFANY MARTIN, and
DAVID STEVENSON,

    Plaintiffs,

v.

'MURICA, LLC,
JAMES JENNINGS, and
DELLA CLAYBURGH,

    Defendants.

---

## OPINION AND ORDER GRANTING MOTION TO DISMISS

---

**THIS MATTER** comes before the Court pursuant to the Defendants' Renewed Motion to Dismiss **(# 21)**, the Plaintiffs' response **(# 25)**, and the Defendants' reply **(# 33)**.[1]

## FACTS

According to the Amended Complaint **(# 19)**, Defendant 'Murica, LLC ("Murica") owns a bar named Starlite Station in Greeley, Colorado; Defendants James Jennings and Della Clayburgh are its principals. Murica hired each of the Plaintiffs to perform work at Starlite Station – *e.g.* Mr. Decker was to work as a D.J., Mr. Aldritch was to work as a bouncer, Ms. Martin was to work as a bartender, and so on.

---

[1] The Defendants' original Motion to Dismiss **(# 16)**, and two motions **(# 17, 22)** by the Defendants seeking to extend the time for filing an Answer with regard to those claims that are not the subject of the Motion to Dismiss are denied as moot.

1

Starlite Station commenced operations on or about November 15, 2018, but from roughly September 5, 2018 until that date, Starlite Station was engaged in a "pre-opening period," requiring cleaning, organizing, and other manual labor tasks to be performed. Murica directed each of the Plaintiffs to perform such tasks during the pre-opening period but did not pay the Plaintiffs for any of their work during this time period. The Plaintiffs commenced this action, alleging: (i) a claim that the Defendants failed to pay them the minimum wage required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, for work they performed during the pre-opening period; and (ii) a claim, apparently asserted only against Murica, that it failed to pay them the minimum wage required by the Colorado Minimum Wage Act ("CMWA"), C.R.S. § 8-6-104, for work performed during the pre-opening period.

The Defendants move **(# 21)** to dismiss the Plaintiffs' FLSA claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the Plaintiffs' Amended Complaint fails to adequately allege facts showing that the Plaintiffs either individually engaged in commerce or that the Defendants, collectively, are an "enterprise" engaged in commerce, as required by the FLSA.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*,

241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

**B. Merits**

The FLSA's minimum wage provisions apply to "employees who in any workweek engaged in [interstate] commerce," as well as to employees "who in any workweek [are] . . . employed in an enterprise engaged in [interstate] commerce." 29 U.S.C.. § 206(a). Thus, there are two sources of potential coverage under the FLSA: what is sometimes described as "individual coverage" and "enterprise coverage."

   1. <u>Individual coverage</u>

Individual coverage focuses on the specific actions of each employee, and examines whether the employee directly participated in the movement of goods or other things in interstate commerce (such as transporting goods across state lines or working for an instrumentality that

3

did so) or used an instrumentality of interstate commerce (*e.g.* interstate phone calls or mail) as part of his or her regular duties. *See Martinez v. Petrenko*, 792 F.3d 173, 175 (1st Cir. 2015); *Martinez v. Palace*, 414 Fed.Appx. 243, 245 (11th Cir. 2011). Here, the Amended Complaint contains effectively identical allegations regarding each Plaintiff's activities during the pre-opening period: each Plaintiff states that they "performed work as a general laborer, which included cleaning, organizing, and other manual labor aimed at preparing Starlite Station to open operations." *Docket # 19*, ¶ 12, 16, 20, 24, 28. Later, the Plaintiffs make a string of allegations that read as follows:

> 50. At all relevant times, Plaintiffs, in their work for Defendants, were engaged in commerce or the production of goods for commerce.
>
> 51. At all relevant times, Plaintiffs, in their work for Defendants, were engaged in interstate commerce.
>
> 52. At all relevant times, Plaintiffs, in their work for Defendants, handled goods or materials that had moved or been produced in interstate commerce.
>
> 53. At all relevant times, Plaintiffs, in their work for Defendants, regularly served customers who traveled to, through, or from Colorado in their travels to, through or from other states.
>
> 54. At all relevant times, Plaintiffs, in their work for Defendants, were employed by a restaurant, an entity that by its nature affected interstate commerce.
>
> 55. At all relevant times, Plaintiffs, in their work for the Defendants, communicated with customers and potential customers using the telephone and internet.
>
> 56. At all relevant times, Plaintiffs, in their work for the Defendants, accepted and processed credit card payments from customers.

These allegations are problematic for at least two reasons. First, the Court agrees with the Defendants that these allegations are entirely conclusory. They do not, for example, identify

4

the specific means by which any of the Plaintiffs "were engaged . . . in the production of goods for commerce" or the identify the "goods or materials that had moved or been produced in interstate commerce" that the Plaintiffs "handled." Certainly, the allegations that the Plaintiffs worked as "manual laborer[s]" and were involved in "cleaning [and] organizing" Starlite Station gives no indication of the types of goods they were handling. At best, these are the very sort of "formulaic recitation of elements" that *Iqbal* makes clear is insufficient pleading.

However, even if the Amended Complaint alleged that the Plaintiffs handled foodstuffs, liquor, and other supplies that would eventually be used in Starlite Station when it finally opened, the Court is not persuaded that their handling of goods that <u>once</u> moved in interstate commerce suffices to create individual coverage under the FLSA. In *Palace*, the Eleventh Circuit rejected a claim by a cook at a small restaurant that his handling of ingredients and tools that had previously moved in interstate commerce rendered him subject to the FLSA's individual coverage. 414 Fed.Appx. 243, 245-46 & n. 4 (11th Cir. 2011) (explaining that goods that move interstate before "reach[ing] the customer for whom they were intended" end their interstate journey there, at least for purposes of the FLSA coverage determination). In that same sense, even if the Plaintiffs alleged that their pre-opening work included shelving liquor bottles that had been ordered from an out-of-state manufacturer or distributor or preparing foods from ingredients that had moved in interstate commerce, this would not suffice to establish individual coverage.

Second, there is a conceptual problem with many of these allegations. The Amended Complaint is abundantly clear that the Plaintiffs' claims arise from work that they performed during the "pre-opening period" of Starlite Station, not while the business was actually open to and serving customers. Thus, the allegations in Paragraphs 53 – 56, all of which describe the

5

Plaintiffs' interaction with Starlite Station customers, appears to be referring to a different point in time than that encompassed by the Plaintiffs' claims. The fact that the Plaintiffs may have made interstate telephone calls to customers <u>after</u> Starlite Station opened is not sufficient to show that the Plaintiffs were engaged in interstate commerce <u>before</u> it opened – that is, during the "pre-opening period" in question. Thus, the Court finds that the Plaintiffs have not adequately alleged facts demonstrating that they are subject to individual coverage under the FLSA.

      2. <u>Enterprise coverage</u>

The second form of coverage available under the FLSA is "enterprise coverage." Enterprise coverage arises when two elements are met: (i) the enterprise – that is, the employer and all individuals or entities engaged in a common business purpose with it – "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce", and (ii) that the enterprise's "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

For the reasons above, the allegations in Paragraphs 50 – 52 (and even 53 – 56, if applicable) are too conclusory to adequately plead that that the Plaintiffs handled particular goods or materials during the pre-opening period that had previously moved in interstate commerce. Although enterprise coverage can be satisfied by the Plaintiffs engaging with goods that had, at some point in time, merely <u>moved</u> in interstate commerce, the Amended Complaint fails to identify those goods at all. The mere allegation that the Plaintiffs were "organizing and cleaning" during the pre-opening period gives no indication of what goods (if any) the Plaintiffs handled during those tasks, much less allege that those goods did indeed move in interstate commerce at some point in time. For this reason alone, the Plaintiffs have failed to adequately allege the existence of enterprise coverage, requiring granting of the Defendants' motion.

The Amended Complaint states that the Defendants are "an enterprise engaged in commerce that had annual gross sales of at least $500,000." *Docket # 19, ¶ 49.* The Defendants contend that this allegation is too conclusory to meet the *Iqbal* standard, but the Court disagrees. There is little more that one need say in order to allege that the Defendants annual gross sales were over a certain amount.

The Defendants also appear to argue that the allegation of annual gross sales is deficient because it does not relate to "time periods that are the subject of the civil action." This argument is somewhat underdeveloped in the Defendants' motion, but finds slightly more solid footing in the reply brief. There, the Defendants point to 29 C.F.R. § 779.269, a regulation promulgated by the U.S. Department of Labor interpreting the "annual gross sales" requirement for enterprise coverage as it relates to a newly-opened business. The regulation explains that, in such an operation, "the employer will necessarily be unable for a time to determine its annual dollar volume on the basis of a full 12-month period," as the sales volume test is typically applied. The regulation goes on to state that "where doubt exists,[2] the gross receipts of the new business during the first quarter year in which it has been in operation will be taken as representative of its annual dollar volume . . . for purposes of determining its obligations under the act <u>in workweeks falling in the following quarter year period</u>." (Emphasis added.) The Court understands the Defendants to contend that this regulation provides that no FLSA enterprise coverage exists until

---

[2] The regulation posits that there are circumstances where "it is readily apparent that the enterprise or establishment will [ ] have the requisite annual dollar volume," such as when the newly-opened business is "a large department store or a supermarket." The regulation does not specifically state what happens in that instance, although the Court might assume that, in such circumstances, FLSA coverage attaches to the endeavor from its inception. The Plaintiffs here have not alleged, much less adduced facts that would suggest, that it was obvious from the outset that Starlite Station would exceed $500,000 in annual gross sales, and thus, the Court need not consider the extent to which this portion of the regulation might allow them to attach FLSA coverage to the pre-opening period.

that enterprise has generated at least $125,000 in a three-month period, and that once it has done so, FLSA coverage attaches to employees for hours worked <u>going forward</u>.  Thus, the Defendants appear to argue, because Starlite Station had not generated at least $125,000 in revenue during (or, more accurately, prior to) the pre-opening period, the Plaintiffs' work during that period was not covered by the FLSA.

The Court declines to conclusively attempt to interpret the regulation at this time. Because the Defendants had not sharpened the argument to a fine enough point until their reply brief, the Court has not had the benefit of the Plaintiffs' best efforts at responding to it.  And, in any event, the Court grants the Defendants' motion on other grounds as set forth above. Nevertheless, the text of the regulation may give the Plaintiffs pause: even if it does not outright preclude an FLSA claim by them for work done prior to Starlite Station's crossing of the $125,000 in sales mark, any ambiguity in the statute might be grounds for the Defendants to assert an affirmative defense of good faith under 29 U.S.C. § 260, thereby precluding any award of liquidated damages.  But the Court makes clear that it makes no such determination on any aspect of 29 C.F.R. § 779.269 at this time.

Because the Court finds that the Plaintiffs' Amended Complaint fails to adequately allege facts sufficient to satisfy either the individual or enterprise coverages under the FLSA, the Court grants the Defendants' Motion to Dismiss the Plaintiffs' FLSA claims.  Although the Defendant does not request as much, the Court further notes that the FLSA claim is the subject-matter jurisdiction hook upon which the Plaintiffs state law claims hang.   As 28 U.S.C. § 1367(c)(3) explains, the Court may – "and usually should" -- decline to continue to exercise such supplemental jurisdiction once it has resolved all claims over which it has original jurisdiction.

*Lucero v. Gordon*, 786 Fed.Appx. 833, 836-37 (10th Cir. 2019). Thus, the Court dismisses the CMWA claim for lack of subject-matter jurisdiction.

The question remains as to whether the Plaintiffs should be given an opportunity to attempt to replead. On the one hand, Fed. R. Civ. P. 15(a) states that leave to amend should be "freely granted," and the 10th Circuit has suggested that "pleadings should enable a claim to be heard on its merits," favoring courts granting leave to amend to cure a failure to state a claim. *See generally Calderon v. Kansas Dept. of Social and Rehabilitation Servs.*, 181 F.3d 1180, 1185-86 (10th Cir. 1999). At the same time, this is the second time that the Defendants have challenged the sufficiency of the Plaintiffs' pleading of FLSA coverage, and the Amended Complaint is the Plaintiffs' response to the Defendants' first challenge **(# 16)** to the sufficiency of their pleading. Thus, it is fair to assume that the Amended Complaint reflects the Plaintiffs' best effort at attempting to plead FLSA coverage. In circumstances where a plaintiff has repeatedly failed to cure pleading deficiencies in prior amendments, the Court is within its discretion to deny leave to amend. *See Hasan v. AIG Property Casualty Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019).

This Court need not conclusively decide whether or not to grant leave to amend at this time, however, as the Plaintiffs have not asked for such leave and, in light of the discussion above, might very well decide not to attempt to resuscitate their FLSA claim. Rather, they may find it appropriate to pursue only their CMWA claim in state court. Rather than attempt to predict the future course of this case, if any, the Court will simply dismiss the claims for the reasons set forth above. If the Plaintiffs believe that they can cure the pleading defects in the Amended Complaint, they are free to file a motion to reopen this action and an appropriately-supported motion seeking leave to amend.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Renewed Motion to Dismiss **(# 21)** is **GRANTED**. The Plaintiffs' FLSA claim is **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6), and the Plaintiffs' CMWA claim is **DISMISSED** for lack of subject-matter jurisdiction. The Defendants' Motion to Dismiss **(# 16)** and motions for extension of time to answer **(# 17, 22)** are **DENIED AS MOOT**. The Clerk of the Court shall close this case.

Dated this 30th day of January, 2020.

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
Senior United States District Judge